1

                    IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION

ANDREA D. WILLIAMS,              )  Case No. 24-cv-2241
                                 )
                   Plaintiff,    )
                                 )
          v.                     )
                                 )
WELLS FARGO BANK, N.A.,          )  Chicago, Illinois
                                 )  January 8, 2025
                   Defendant.    )  10:00 a.m.

                TRANSCRIPT OF PROCEEDINGS - MOTION
              BEFORE THE HONORABLE APRIL M. PERRY


APPEARANCES:


For the Plaintiff:    CHEELEY LAW GROUP, LLC
                      BY:  NICK HEATH WOOTEN
                      2500 OLD MILTON PARKWAY, SUITE 200
                      ALPHARETTA, GEORGIA   30009


For the Defendant:    WINSTON & STRAWN
                      BY:  SCOTT M. AHMAD
                           ANGELA SMEDLEY
                           CARRIE HARDMAN
                      35 W. WACKER DRIVE
                      CHICAGO, ILLINOIS   60601


For the Intervener:   PAYTON LEGAL GROUP, LLC
Andrea Williams       BY:  RUSTY A. PAYTON
                      20 N. CLARK STREET, SUITE 3300
                      CHICAGO, ILLINOIS   60602


For the Intervener:   DJC LAW
DJC Law, PLLC         BY:  ANDRES CHRISTIAN PEREIRA
                      1012 W. ANDERSON LANE
                      AUSTIN, TEXAS   78757

```
Court Reporter:        NOREEN E. RESENDEZ, CSR, RPR, CRR
                       Official Court Reporter
                       United States District Court
                       219 S. Dearborn Street, Suite 1725
                       Chicago, Illinois  60604
                       (312) 582-5267
                       Noreen_Resendez@ilnd.uscourts.gov
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court, in part via telephone:)

THE CLERK: Calling case 24 CV 2241, Williams versus Wells Fargo.

MR. WOOTEN: Nick Wooten for The Trustee in the Bankruptcy Estate of Andrea Williams.

MR. AHMAD: Good morning, Your Honor. Scott Ahmad from Winston & Strawn on behalf of Wells Fargo. Angela Smedley, my colleague, is here and also we have Carrie Hardman from our New York office on the phone.

MR. PAYTON: Good morning, Your Honor. Rusty Payton on behalf of the intervener.

THE COURT: Is there anyone here on behalf of DJC?

MR. WOOTEN: They're on the phone, Your Honor.

THE COURT: Great.

MR. PEREIRA: Yes. Good morning, Your Honor. It's Andres Pereira on behalf of DJC.

THE COURT: All right. Welcome everybody.

As I think everyone knows at this point, we are here regarding the motion by both DJC and Williams to intervene, which was granted by the Court. I understand there are some questions about to what extent they will be allowed to intervene. I don't know who wants to start. I will hear from everybody in

order.

MR. WOOTEN: So, Your Honor, for the bankruptcy trustee, who obviously has a statutory obligation to maximize the claim and Ms. Williams as the debtor has rights in all surplus, the bankruptcy estate will have to pay back out of any settlement proceeds, of course, special counsel's attorneys fees and costs, the trustees' commission, and they're about $200,000 in debt. We value the claim at many millions of dollars, just for the Court's reference --

THE COURT: Hopefully there will be no overage.

MR. WOOTEN: No. My point is there will be a substantial overage. We think Ms. Williams has a substantial overage that she will retain should the case come out in our valuation. We have had this litigation in the past and the simplest way to say this is, our valuation is justified. So we have an idea of where we think the case is at if we are successful, and we're operating under the ICFA fairness claim, which is a very broad statute. Case law on point saying that if there's a violation of a consent order, that that is an unfair act under the ICFA, that is sort of the basis of, you know, our underlying claim.

So from our perspective, Ms. Williams has rights that she needs to protect. Wells Fargo made an

objection to my dual representation of Ms. Williams and the trustee. So now that the representation is split and I'm lead counsel for the trustee, Mr. Payton is handling Ms. Williams' interests.

So we think that she should be allowed to intervene for all purposes. That's also going to facilitate discovery. We had this issue in the Garcia case that Judge Pallmeyer handled. Until the bankruptcy estate case paid out, in that case because it was only about $25,000 in claims, so it just was paid out of funds and closed and the case went back to the Garcias. We have a similar scenario. But what would happen is, instead of being able to voluntarily get discovery and things like that, they had sent subpoenas. You know, it was complicated because the bankruptcy court was in for a while and then it wasn't.

So by allowing the intervention for all purposes, it seems to allow Mr. Payton to protect Ms. Williams' rights and also facilitates the litigation of the case and make it easier for us to move very quickly and efficiently.

THE COURT: All right. Let me ask this before anyone else says their piece. Does anyone other than Wells Fargo object to Ms. Williams being able to intervene for all purposes?

MR. WOOTEN: I don't believe anyone has.

THE COURT: Okay. Does Wells Fargo object?

MR. AHMAD: We do, Your Honor.

THE COURT: And what is the basis for your objections?

MR. AHMAD: Multiple bases. So with respect to Ms. Williams, the standard that Mr. Wooten just explained is actually not the standard for intervention, okay.

So just by way of background, there were two events of major consequence with respect to this motion. The first is that Ms. Williams filed for bankruptcy in the first place, which means that the bankruptcy estate owns all of her claims. And in exchange for that, all of her debts were relinquished, right, and that's the consequence of that; and the bankruptcy estate owns all of those claims. And the bankruptcy estate and the bankruptcy trustee, has an obligation now to maximize that and then to the extent that there's a surplus do that.

Okay. With respect to intervention in these -- and one other thing. Originally this case was filed by Ms. Williams individually. Judge Durkin dismissed it on the basis that she has no standing. So our position is that she can't now use the intervention rules to get

into a case where she was actually dismissed for lack of standing. And I'll explain the practical implications of that in a moment.

But the standard is, it is not whether -- and in the motion they say this, which actually dooms the motion. They say, well, Ms. Williams has an interest in the DJC claim, which we'll talk about in a second. But with respect to the underlying case, well, she should just be able to kind of join the party so to speak, right, and litigate in the case as a party and that will make things more efficient. The only question for -- with respect to the intervention is whether the bankruptcy trustee can adequately represent Ms. Williams' interest. And there's actually multiple cases, a Fourth Circuit case a couple of Federal District Court cases that we found that says, unless there's some allegation that Mr. Wooten or the bankruptcy trustee is conflicted from doing that or in cahoots with, you know, the other side or something like that, then the bankruptcy trustee has their obligations, and Ms. Williams does not have a right to intervene and participate in the litigation.

And the cases that they cited actually aren't even bankruptcy cases. They just say the standard. As a matter of fact, all of them deny intervention. And

to put a finer point just on the -- to the extent that you think, well, why do you really care if she's --

THE COURT: I was, yes.

MR. AHMAD: -- if she's in it. The reason -- and the cases actually explain this, right. Is it needlessly and unnecessarily expands the litigation, right. Because instead of litigating against just the bankruptcy trustee, we now actually have to litigate against -- just to use a casual term, a two-headed monster, right, so to speak. When one of the heads had no standing, right, to begin with. And so when you're granted full intervention rights, think of the things that come with that, right. So Number 1, we can't negotiate a settlement with the trustee to the extent we wanted to settle, right, because Ms. Williams to the extent that she decided she didn't want to participate in that, could then block that when again the only question is adequate representation, whether the trustee will do that.

And then the other issue, right, is the same thing with dismissal, same thing with discovery. They can serve dual discovery requests. It expands the litigation. And that's why the only question is adequate and not, well, it would be ideal if I could also participate when I had no standing. So we

actually think that the -- letting Ms. Williams in for the purposes of -- for all purposes as she says, violates the bankruptcy code, the rules on intervention, and is an end-around for somebody to get back into a case who was already dismissed from it.

And that's why it matters to us particularly with the settlement conference coming up and things of that nature.

THE COURT: Well, let's talk about that. What do we think the likelihood of settlement is in this particular case? You're set for, I think, January 30th. Are their concerns justified that a couple more people at the table is going to make this a mess?

MR. WOOTEN: No. Ultimately I have to recommend the value of the settlement based on what I know. My fiduciary obligation is to maximize the claim. And if I believe the case is -- that there's money offered that justifies a settlement, then I have a duty to recommend the settlement. Obviously, you know, for Ms. Wililams I represented her. I have a good relationship with her. I know Mr. Payton. We have a good relationship. We've worked together. We worked together on the other Wells Fargo case. We all know what the relative value range of the case is. So

there's no disunity on this side about what the valuation of the claim is. And that's driven by the success we have had in this type of litigation over more than 10 years in this courthouse. We know what these cases are worth. So there's no issue there.

I recognize Scott, Mr. Ahmad, we're very familiar with each other. He's a friend. So don't want to be too --

THE COURT: I know he just called you a two-headed monster.

MR. WOOTEN: Well, my point is, I don't see the need for that. We already have done tons of paper discovery that we more or less agreed will be carried over to be used in this litigation. Really the discovery that has to be done in this case is more about deposing people who are responsible for bringing Wells Fargo into compliance with 20 years of consent decrees. And we've already laid out the people we want to depose. We've already sent discovery. There's no other paper discovery to be sent. Mr. Payton is not coming back with a another whole set of paper discovery. I think the concern about Mr. Ahmad has expressed about, we have to answer Ms. Williams' questions, Mr. Payton's questions, we're not going to do that either. I'm going to handing the litigation.

Now, when Ms. Williams is deposed, one of the concerns I had about the idea of splitting the representation, is that now I can just sit and prep -- you know, with Ms. Williams' counsel, I can sit and prep her and there's still a privilege for her to have me prep with Mr. Payton, I'm not in a situation where Wells Fargo comes to the deposition and goes, well, what did you and Mr. Wooten talk about, right. So the point of it is, is that this makes it easier for me to get Ms. Williams' cooperation and she still have an attorney-client privilege because I can take the prep through her counsel. I can prep counsel and counsel can prep her. Those type things, right. So for us, the concern, while it may be valid on some other fronts, is not valid here. We are not going to do that. And I would say if the Court just grants as is, Mr. Ahmad can drag me back up here and spank me if that happens.

THE COURT: Let me ask Ms. Williams' attorney. Would she have a right to block the settlement that the trustee was in favor of?

MR. PAYTON: I don't believe so, no, Your Honor. But that doesn't mean she wouldn't have options in terms of whether she would settle with the estate and takeover the claim. If it was a settlement that

she didn't agree to, that's certainly something I have to advise her about. She can always pay off her debts and the bankruptcy estate is settled and it becomes hers, the case itself becomes hers. So she has to evaluate that at every given point. If the trustee, you know, were adverse with us, which is certainly not the case today, but you can see a situation where the trustee says, look, I'm getting 100 percent for the creditors. I'm getting all my fees paid. It's a good settlement for me.

THE COURT: Correct.

MR. PAYTON: It's not so good for Ms. Williams. And I think as Mr. Wooten pointed out here, the argument that's being made, I think, recognized that the value here is substantially more than what the estate's interest is. That's why Ms. Williams is in somewhat of a precarious position. She needs to be involved in the case, and I think that some of the fears that Wells Fargo raises can probably be dealt with in terms of the terms in order. Like Mr. Wooten said, I don't intend to duplicate discovery, to have a separate set, to run a separate track. If we want to put limitation on what I can actually engage in, that's certainly doable; and if I feel that Mr. Wooten is not taking some deposition that I want to take or pursuing

some line of discovery, I can always come in and seek leave to take that discovery. But right now I would agree, I'm not going to duplicate any of the discovery that's been undertaken by Mr. Wooten.

THE COURT: Does that make you feel better or not?

MR. AHMAD: Respectfully, no, Your Honor. Because all of the statements that they're making are exactly what the intervention rules don't permit one to do, to sit around and second guess decisions that are made by the trustee's counsel. There has to have been a pled allegation by them that the trustee and the trustee's counsel are somehow conflicted.

And I do also have to just note for the record, I've got some real concerns also about, you know, Mr. Wooten. In the bankruptcy court they explicitly said, You can't represent both people. Okay. So he's representing the trustee. Now he's here saying, well, you know, I am going to basically represent everybody, you know, wink wink, or whatever just to pay service to the bankruptcy court, you know, on that point.

But, again, all of the things that they said can be done without her being a party. If they want to coordinate with her in the background, we don't have to grant her the rights of a party to do that is the

point. Again, if there's a common interest, you don't all need to be parties to make a common interest assertion, to establish a privileged conversation if he wants to try to prepare her for a deposition and things like that.

The problem is, once they become a party, they can -- there can be a judgment. They can file an appeal. They have all of these rights that are unnecessary and are going to turn the litigation into a more complicated litigation than it needs to be and then throw into the mix that you have DJC also intervening, which is a separate issue, which we'll talk about.

THE COURT: Do you agree with their estimate though that there is going to be an overage here?

MR. AHMAD: Well, they've alleged that. I mean, certainly, Your Honor, we think we're going to win the case. We have, you know, causation defenses, but ...

THE COURT: Sure. Based on you're going to a settlement conference in like two weeks?

MR. AHMAD: Yes.

THE COURT: I assume you are going to go at that with, you know, good faith?

MR. AHMAD: Absolutely.

THE COURT: Based upon the amount that you understand to be at issue now and that you're prepared to offer -- I'm not going to get into your business at this point on that -- would that result in an overage in this case based on your understanding?

MR. AHMAD: Yes. Yes, it would. But, again, the bankruptcy rules and the obligations are set up to handle that. Because to the extent that there becomes a reasonable probability of overage, that doesn't change Mr. Wooten's obligations. He then has the obligation to maximize the surplus and maximize the overage. So, again, there's no question as to the adequacy of the representation that would permit Ms. Williams to then become a party and have all the full rights of a party.

THE COURT: Let's move for a moment to the DJC issue.

DJC's attorney has not yet spoken. I don't actually remember the name of who is on the call.

MR. WOOTEN: Mr. Pereira.

THE COURT: Mr. Pereira, were you trying to intervene for anything beyond just the establishment of the lien?

MR. PEREIRA: No, ma'am. Just to establish the lien for attorney's fees and expenses that we've

incurred during the period of time that we represented Ms. Williams and the trustee.

THE COURT: So you won't be presumably at the settlement conference or asking for discovery or anything like that?

MR. PEREIRA: I was going to listen in to the settlement conference to see how it went, Your Honor, but I won't be asking for any discovery.

THE COURT: Okay. And I assume you won't be asserting that any proposed settlement amount is too high or too low, anything like that?

MR. PEREIRA: That's correct. That's correct. We are just here to preserve our interest and our fees and the expenses that we incurred.

THE COURT: And that motion has been granted. Does anyone have concerns? I understand Wells Fargo doesn't like it.

MR. AHMAD: No, on that one -- I don't just not like everything, Your Honor. No. On that one, subject to those representations, that's fine. Typically in attorney's liens, they just file a notice of lien. But, again, it has been made clear that, like, they can't litigate the case and start serving people with discovery and block a settlement and appeal and everything like that.

THE COURT: All right. Congratulations. You've solved one problem.

MR. PEREIRA: That's correct, Your Honor. In that regard, we filed a Notice of Lien as an attachment to Docket Number 77, which was our reply. I'm not sure if we need to re-file the notice of lien or if the Court can just take notice now that the lien has been filed.

THE COURT: I will take notice now that the lien has been filed. I also don't know if there's anything official that we need do that. Do those typically get filed as separate docket entries?

MR. WOOTEN: Your Honor, I think the attorney's lien issue I think you said initially, whatever they're entitled to, anything that they're entitled to has to be determined later if there's a recovery. So anything on that issue, until there's actual dollars to talk about is -- it doesn't matter until we get a dollar in our hand, and then we can come back and talk about whether they're entitled to some of it.

THE COURT: All right. So we have finished with the DJC issue.

Does anyone have anything else that they would like to say on the Ms. Williams' motion?

MR. PEREIRA: Your Honor, to clarify, Your

Honor, with regard to the DJC issue, was it clear that the Court is taking notice of the lien at this time?

THE COURT: Yes. And if it wasn't, it is now.

MR. PEREIRA: Thank you, Your Honor.

MR. WOOTEN: Your Honor, Mr. Wooten again, just for the record. I'm sorry. I've been lax about that.

From my perspective, if Mr. Ahmad were dealing with people that he didn't already know and he didn't understand who was driving the train of litigation, some of those concerns he expressed might be valid. But, again, if we do something other than what I said, I know he'll have me back in front of you and I know you would be on me like, you know, the way you should if I was doing something I wasn't supposed to be doing.

We are not doing this to game them. They asked to split the representation. They asked -- they claimed there was a conflict. I didn't want to go to Seventh Circuit to decide that issue. It's a waste of time. The bottom line is the claim has to go forward in the somebody's hands, it's in the bankruptcy trustee's hands; and as Mr. Payton said, Ms. Williams always has the right to file bankruptcy any time and then she owns the assets again. That's the way the statute works. So from our perspective, this is much to do about nothing, and it's keeping us from getting

on with the real things.

MR. PAYTON: Your Honor, if I may, as you might understand, my client, Ms. Williams, is a bit confused and concerned. She's had a change of counsel. She's had a change of law firm. She's had this litigation happening in the bankruptcy court. So she believes this is her case. Yes, she has a debt to pay and she's trying to get that paid as best she can; but she has a better sense of security if someone who is devoted solely to representing her interests is participating in resolution of the case.

THE COURT: Final word.

MR. AHMAD: Again, respectfully, the representation being split is a different issue than who should be a party in this case. We're certainly sympathetic to the, you know, confusion by Ms. Williams but a lot of it has to do with it being the consequence of filing for bankruptcy. To Mr. Wooten's point about, well, she's going to own the claim after that. That's actually not true. Everything has to be extinguished. And this is kind of what happened in the Garcia case. And then the bankruptcy estate actually gets closed. It doesn't remain open. The bankruptcy estate is open. There's hundreds of thousands of dollars of debt that come even before that.

So the only parting statement that I would make is that, again, I don't believe that the intervention and standing rules permit someone to say this is all going to be okay; I promise, Your Honor.  And then permit an exemption from the standing rules for somebody who was dismissed for lack of standing already.

MR. WOOTEN:  Just a technical point. Judge Durkin substituted the trustee for Ms. Williams and then we went through the issue of conflict/not conflict.  As a technical point that's all.  I'm done.

THE COURT:  We're all lawyers, so ...

MR. AHMAD:  There's a funny backstory about that.  He said substitute or I'll dismiss.  And he said, I'll substitute, Your Honor.

MR. WOOTEN:  Judge Durkin and I are close.  He made it very clear that I was wrong in that moment and I should just agree with him, so ...

MR. PAYTON:  Your Honor, I have one suggestion whether the Court is inclined or not inclined to grant intervention, I think perhaps maybe my client's concerns could be alleved by at least allowing us intervention to participate through settlement conference to get to that point and then revisit this as to, you know, the actual litigation of the case,

because then my client may make some decisions about whether she takes over the claim.

THE COURT: I think that makes a lot of sense. Ms. Williams certainly has an interest in defending against the attorney's lien. So that is not in question as to whether or not she's allowed to intervene for that purpose. What we've been talking about here today is whether she's allowed to intervene in the entire case.

The reason that I ruled on this as quickly as I did, given you've already heard several times is because of my backlog and because of that January 30th settlement conference, and I wanted to make sure that all the proper parties were there that needed to be there.

I'm also very unfamiliar with a bankruptcy case where the debtor seems to be in a position where she could at any moment pay it off and the bankruptcy trustee would be out and she would be back in.

So in the interest of getting this resolved, hopefully in the next month or so, I'm going to allow her to intervene at this time for all purposes. To the extent the case does not settle and you have any issues with the two-headed monster rearing its head, let me know and we'll talk about it again.

MR. AHMAD:  Thank you, Your Honor.

MR. WOOTEN:  Thank you, Your Honor.

MR. PAYTON:  Thank you.

MR. AHMAD:  The two headed-monster is now going to be a joke in this case.

THE COURT:  Thank you to everyone on the phone.

THE CLERK:  Court is adjourned.

(Concluded at 11:41 a.m.)

*    *    *    *    *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


*/s/Noreen E. Resendez*                    *01/27/2025*
_____          _____
Noreen E. Resendez                    Date
Official Court Reporter