**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALEX MOGLIA,** as Chapter 7 trustee in the bankruptcy estate of **Andrea Williams** Case No. 18-16866, <br><br>        **Plaintiffs,** <br><br> v. <br><br> **WELLS FARGO BANK, N.A.,** <br><br>        **Defendant.** | **CIVIL ACTION NO: 1:24-cv-02241** |

**BRIEF IN SUPPORT OF THIS COURT'S JURISDICTION**
**TO DETERMINE DJC'S *QUANTUM MERUIT* FEE**

**I. INTRODUCTION**

This matter arises from a mortgage servicing case brought against Wells Fargo Bank, N.A.. A case brought by the Chapter 7 Trustee in this District Court. Not the bankruptcy court. DJC Law, PLLC ("DJC") is the plaintiff's firm that first represented Ms. Andrea Williams and then the Chapter 7 Trustee as Special Counsel in this case from its inception through December 10, 2024. Barely more than two months later, on February 24, 2025, this case was settled by the Chapter 7 Trustee. DJC seeks a fair fee for its work and moves in equity and law for briefing and an evidentiary hearing to determine a *quantum meruit* attorney fee award because this court has concurrent jurisdiction with the Bankruptcy Court to rule on this matter.

## II. BACKGROUND

DJC filed a Motion to Intervene for the purpose of asserting an attorney fee lien against both the bankruptcy estate and Ms. Williams on October 29, 2024 (Dkt. 60). On November 26, 2024, DJC filed an Amended Notice of Attorney Fee Lien asserting "a lien for a fee interest in this matter for any recovery by Andrea Williams **or the Bankruptcy Estate of Andrea Williams, Case No. 18-16866.**" (Dkt. 77). The motion and notice of lien were filed and served during DJC's representation of the Chapter 7 Trustee. The Court granted intervention on December 23, 2024 (Dkt. 82) and took notice of the lien on January 8, 2025 (Dkt. 86). The notice of lien always contemplated the bankruptcy estate. All parties consented to the Court's jurisdiction in seeking a settlement conference before the Magistrate Judge in this matter. "Unopposed motion and joint consent to refer attorney fee issue to Judge Weisman." (Dkt. 96). Settlement discussions of the fee issue did not resolve the matter, and the Court requested briefing on the issue of jurisdiction. (Dkts. 115 & 119).

### How the Chapter 7 Trustee Came to Be Represented by DJC

DJC and its attorney Mr. Nick Wooten began work on this case on January 19, 2024. Ms. Williams was the initial plaintiff in the case. When DJC became aware that Ms. Williams had filed for bankruptcy, DJC, through Wooten, contacted the Chapter 7 Trustee, the bankruptcy proceeding was reopened, and the Chapter 7 Trustee substituted into the case. Upon application of the Chapter 7 Trustee, on May 21, 2024, the Bankruptcy Court authorized the employment of both DJC and Mr. Wooten as Special Counsel to the trustee. Mr. Wooten was an employee of DJC and remained employed at DJC

through at least October 5th of 2024. After Mr. Wooten left the firm, DJC remained as Special Counsel to the Trustee through December 10th, 2024.

Out of 93 total docket entries made in this case up through settlement, 80 were made during DJC's representation of either Ms. Williams or the Chapter 7 Trustee. The remaining entries concern the intervention by DJC for purposes of asserting the attorney lien, the intervention of Ms. Williams, or the scheduling of the settlement conference. (*See* Court Docket).

The vast majority of the work done by Mr. Wooten occurred while the case was with DJC, including all substantive filings, motion practice, and case management efforts. In other words, almost all the work done by Mr. Wooten on this case occurred while he was employed by DJC. The only work on the case done by Mr. Wooten after he left the firm (as reflected on the docket) would have been preparation for the settlement conference. DJC is a contingency-based plaintiffs' litigation firm, and Mr. Wooten did not keep time records that are part of the case management system at DJC.

DJC hired Mr. Wooten in part because of his success in handling mortgage servicing cases in the Northern District of Illinois. For example, Wooten was one of the lawyers in *Hammer v. Residential Credit Sols.,Inc.,* 2015 U.S. Dist. LEXIS 162636 (N.D. Ill. Dec. 3, 2015) which was tried to a $2,000,000 jury verdict in 2015. Wooten was counsel in *Saccameno v. Ocwen Loan Servicing,* LLC, 372 F. Supp. 3d 609 (N.D. Ill. 2019) which resulted in a $3,582,000 jury verdict. Wooten was also counsel in an arbitration before AAA styled *Kim Albeck v. PHH Mortgage Corporation, FKA Ocwen Loan Servicing, LLC, a wholly owned subsidiary of Ocwen Financial Corporation* with case number 01-21-0003-8487 which resulted in a $1,857,002.56 final arbitration award.

Mr. Wooten was highly compensated by DJC for his mortgage servicing case experience, **earning $500,000.00 per year while employed by DJC.** The court should take this into consideration when making an equitable determination of the fees due to DJC in this matter.

### III. JURISDICTION

This brief is submitted in support of the United Sates District Court's jurisdiction to adjudicate DJC's claim for legal services rendered. This Court possesses and should exercise jurisdiction because DJC's entitlement to relief is not under the Bankruptcy Code's statutory scheme for the compensation of attorneys and other professionals, it is under the common law doctrine of *quantum meruit. See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) ("This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.").

The co-existence of Andrea Williams' bankruptcy case presents no bar or impediment to this Court's jurisdiction. United States District Courts are vested with original jurisdiction over all civil proceedings "arising under" title 11, "arising in" a case under title 11, or "related to" a case under title 11. 28 U.S.C. Section 1334(b). DJC's claim does not arise in or under bankruptcy law because it does not raise any bankruptcy law claims or issues. It is "related to" Andrea Williams' bankruptcy case because its resolution may affect the allocation of assets or obligations among interested parties in that case. District Courts retain jurisdiction in related matters after reference to bankruptcy court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).

A civil proceeding "related to" a bankruptcy case may be heard by a district court even where the claim is based on state law or equity. The Seventh Circuit has emphasized that "related to" jurisdiction under Section 1334(b) is broad, encompassing claims where the outcome could affect the debtor's rights, liabilities, or the administration of the estate. *See In re FedPak Sys., Inc.*, 80 F.3d 207, 213–14 (7th Cir. 1996).

The Bankruptcy Code presents no bar to this Court's jurisdiction. DJC's claim to this Court does not arise under or relate to the statutory scheme for compensation of professionals under the Bankruptcy Code. It does not seek allowance of fees as an administrative expense under 11 U.S.C. Section 330, nor is it based on an appointment under Section 327. DJC seeks a common law remedy for work performed and accepted, grounded in a restitution doctrine.

Section 327 of the Bankruptcy Code permits a bankruptcy trustee, with the court's approval, to employ attorneys and other professionals "to represent or assist the trustee in carrying out the trustee's duties under" the Bankruptcy Code. 11 U.S.C. § 327(a). Section 330, *inter alia*, permits an appointed attorney to be awarded "reasonable compensation for actual, necessary services rendered by the . . . attorney" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 is inapplicable to DJC's claim here because the Supreme Court in *Lamie v. United States Tr.,* 540 U.S. 526 (2004) held that compensation from the bankruptcy estate is not available under that section to attorneys like DJC who were no longer employed under Section 327. *See In re Renaissance Residential of Countryside, LLC*, 423 B.R. 848, 856 (Bankr. N.D. Ill. 2010). "All of which means that the basis for an award of fees in this case can only come from state law." *In re Weinschneider*, 395 F.3d 401, 404 (7th Cir. 2005).

DJC's claim here is not made pursuant to the statutory scheme for compensation of professionals employed by the estate. It does not seek allowance of fees as an administrative expense under 11 U.S.C. Section 330, nor is it based on an appointment under Section 327. Rather, DJC seeks a common law remedy for work performed and accepted, grounded in restitution principles.

This Court has jurisdiction under 28 U.S.C. § 1334(b) to adjudicate DJC's equitable claim for quantum meruit compensation. DJC seeks a reasonable fee for services that materially benefitted the estate. Although the Bankruptcy Court has jurisdiction, this District Court independently retains and should exercise concurrent jurisdiction over this state-law equitable dispute to ensure justice is done.

This case was litigated entirely in the District Court, not in the Bankruptcy Court. DJC filed its lien and motion to intervene while still serving as Special Counsel, and all parties—including the Trustee—consented to the District Court's jurisdiction to adjudicate the fee dispute (see Dkt. 96, "joint consent").

Moreover, the evidentiary record—including more than 80 of 93 docket entries reflecting DJC's work, and the complex factual and legal nature of the litigation—makes the District Court the best-equipped forum for resolving this issue. Returning this matter to the Bankruptcy Court would risk duplication, delay, and fragmentation of the equitable adjudication process already underway.

### *Quantum Meruit* Provides an Equitable Basis for Compensation and Jursidiction

*Quantum meruit* is a well-established doctrine in Illinois and federal common law. Latin for "as much as he has deserved"—is an equitable doctrine that allows a party to recover the reasonable value of services rendered when a contract does not exist, is unenforceable, or has been partially performed. Rooted in British common law, the concept developed as part of the broader framework of quasi-

contract and restitutionary principles designed to prevent unjust enrichment. It allows recovery for services rendered where a party has benefitted from those services and compensation is reasonable under the circumstances. The Seventh Circuit has long recognized the validity of *quantum meruit* as a means to avoid unjust enrichment. *See Stark v. PPM America, Inc.,* 354 F.3d 666, 673 (7th Cir. 2004).

The doctrine of *quantum meruit* emerged from the medieval English courts of assumpsit, which gradually recognized certain obligations not founded on express agreements. By the 17th century, common law courts began awarding compensation for services where no formal contract existed, particularly in cases where one party had clearly benefited from the labor or services of another.

American courts inherited *quantum meruit* from English common law as part of the broader doctrine of implied contracts and quasi-contracts. From the earliest days of the Republic, courts recognized that even without a formal agreement, equity required that a party who benefits from another's labor or materials should pay the reasonable value thereof. In American common law, *quantum meruit* reflects a deep commitment to fairness, especially in situations where strict contractual doctrines would lead to inequitable outcomes. While its origins lie in English law, U.S. courts have shaped *quantum meruit* into a versatile remedy grounded in principles of justice, fair dealing, and the prevention of unjust enrichment.

In the context of legal services, the doctrine permits compensation even in the absence of a formal retainer agreement or statutory appointment, so long as the services provided a measurable benefit to the recipient. The equitable principles underlying *quantum meruit* are not displaced by the Bankruptcy Code where the claim does not necessarily seek estate funds under 11 U.S.C. Section 330, but instead seeks to establish the reasonable value of services rendered.

DJC provided legal services that directly supported the recovery of assets for the estate. The value of those services is independently cognizable under *quantum meruit*, and adjudication of that value is within the traditional competence of the District Court. As such this Court has concurrent jurisdiction.

## IV. LEGAL STANDARD FOR QUANTUM MERUIT

Under Illinois law, attorneys discharged prior to resolution of a contingency case may recover in *quantum meruit* for the reasonable value of services rendered. Where the attorney's fees are based upon the theory of *quantum meruit* rather than an express contract, the court is literally to award the attorney "as much as he deserves." *Lee v. Ingalls Memorial Hospital* (1992), 232 Ill. App.3d 475, 478, 597 N.E.2d 747. In making this determination, the trial court should assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the clients. *Kannewurf v. Johns,* 632 N.E.2d 711, 717 (Ill.App. 1994) citing *Lee,* 597 N.E.2d 747 (Ill.App. 1992). Federal courts apply similar standards in evaluating reasonable attorney fees. *See Hensley v. Eckerhart,* 461 U.S. 424 (1983); *Harper v. City of Chicago Heights,* 223 F.3d 593 (7th Cir. 2000). DJC attorneys, including Mr. Wooten prior to his departure, collectively performed the majority of the substantive work in this case. An evidentiary hearing as to the amount of work done by Mr. Wooten while at DJC and the amount of fees due DJC from this case is appropriate before this court.

8

## V. CONCLUSION

Fundamentally, equity is about preventing one party from benefiting unjustly at another's expense. The Trustee is now administering a case built in large part on DJC's work. That benefit is undisputed. To now say DJC cannot even be heard on whether it is entitled to fair compensation **risks unjust enrichment**—the very problem *quantum meruit* was designed to solve. This court has broad equity jurisdiction to determine the fees due DJC.

For the foregoing reasons, DJC respectfully requests that this Court determine that it has equity jurisdiction on the issue of *quantum meruit* fees and sets a briefing schedule and an evidentiary hearing for a determination of attorneys' fees due to DJC.

Dated: June 13, 2025.

*Respectfully submitted,*

*/s/ Andres C. Pereira*
Andres Pereira
DJC LAW, PLLC
1012 West Anderson Lane
Austin, Texas 78757
(512) 220-1800
apereira@teamjustice.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2025, I caused the foregoing Motion and Brief in Support Thereof to be filed and served via the Court's CM/ECF system on all counsel of record.

*/s/ Andres C. Pereira*
Andres C. Pereira
