**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ALEX MOGLIA, as Chapter 7 Trustee in the Bankruptcy Estate of ANDREA WILLIAMS, Case No. 18-16866,** | Case No.: 1:24-cv-02241 |
| Plaintiff, | Honorable April M. Perry |
| vs. | Magistrate Judge Honorable M. David Weisman |
| **WELLS FARGO BANK, N.A.,** | |
| Defendant. | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM IN OPPOSITION TO DJC LAW, PLLC'S MOTION AND MEMORANDUM IN SUPPORT OF THIS COURT'S JURISDICTION TO DETERMINE QUANTUM MERUIT ATTORNEY FEES**

Plaintiff, Alex Moglia, as Chapter 7 Trustee in the Bankruptcy Estate of Andrea Williams, by and through his undersigned special counsel, hereby provides the following response and memorandum in opposition to DJC Law, PLLC's Motion [Dkt. 120] and Memorandum [Dkt. 120-1] in Support of this Court's Jurisdiction to Determine Quantum Meruit Attorney Fees.

**INTRODUCTION**

There is only one question before the Court: whether this Court or the Bankruptcy Court is the proper forum to determine DJC Law, PLLC's ("DJC") claim of lien in this case. The answer is absolutely clear. The Bankruptcy Court is the proper forum for this decision. All questions presented represent core bankruptcy matters exclusive to the jurisdiction of the Bankruptcy Court.

**RESPONSE TO DJC'S MOTION**

1. **DJC's Role in this Litigation:** DJC performed no work on this case. DJC has no time records that can be certified to support a fee award in this case and DJC cannot offer competent evidence to support any fee application. No one at DJC has ever litigated a plaintiff's side mortgage

1

servicing case. No one at DJC has ever obtained a verdict for a consumer in a plaintiff's mortgage servicing case. Andrea Williams originally became a client of Nick Wooten through a referral by Attorney Marc Dann. Marc Dann and Nick Wooten have had a long existing relationship that predated Wooten's employment at DJC. Marc Dann made the referral to *Nick Wooten* and would have done so regardless of whether Wooten was practicing alone or as an employee of any firm. Dann made the referral based solely on his relationship with Wooten and Wooten's established history of success suing mortgage servicers on behalf of wronged consumers. Dann has no prior or current relationship with DJC.

DJC also contends that DJC represented the Trustee in the underlying litigation. As explained by the general counsel to the Trustee in a bankruptcy court hearing: "In bankruptcy, we retain special counsel by the lawyer, depending on which firm he's at. It will be Mr. Wooten at his new firm." See ***Exhibit 1*** (Tr. 21:11-14, November 19, 2024, *Andrea D. Williams, Debtor*, Bankr. N.D. Ill., Case No. 18 B 16866). Wooten was the attorney retained as special counsel. DJC was identified only for conflicts purposes.

2. **Lien and Intervention:** DJC's claim for a lien is another important reason for this matter to be decided by the Bankruptcy Court. On March 26, 2024, the Bankruptcy Court reopened the Debtor's bankruptcy case to pursue this litigation against Wells Fargo for the Debtor's bankruptcy estate. DJC claims to have filed a lien in this case against both the bankruptcy estate ***and*** Ms. Williams. DJC even filed an amendment to assert a lien for a fee interest for any recovery by Ms. Williams ***or*** the bankruptcy estate (Dkt. 60, amended at Dkt. 77) (emphasis supplied). By these actions DJC seeks to establish a lien over property of **the bankruptcy estate** at a time when the bankruptcy case was re-opened (emphasis supplied). DJC's conduct violates the automatic stay

in bankruptcy and DJC's efforts to create a lien are void as a matter of law. *In re Enyedi*, 371 B.R. 327, 333-34 (Bankr. N.D. Ill. 2007) is instructive on this point.

3. **District Court Jurisdiction:** DJC's position evinces a fundamental misunderstanding of bankruptcy jurisdiction. Article III Courts have always had jurisdiction over all matters arising under Bankruptcy law. Since *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) declared the 1978 version of the Bankruptcy Code unconstitutional, every Circuit has unanimously recognized that "federal courts have original jurisdiction over all bankruptcy proceedings arising out of Title 11 of the Bankruptcy Code (see 28 U.S.C. § 1334), such cases are automatically referred to the Bankruptcy Court in the first instance." *Gecker v. Marathon Fin. Ins. Co., RRG*, 391 B.R. 613, 614. *See also* the Northern District of Illinois's IOP 15.

4. **Case Resolution and Benefit to Estate**: DJC argues under this point that its work provided benefits to the "estate" aka "the bankruptcy estate of Andrea Williams." This makes explicit that DJC seeks compensation for services allegedly rendered to the bankruptcy estate. "Professionals seeking compensation for services rendered to a bankruptcy estate must file with the court an application for allowance of compensation and reimbursement of expenses. 11 U.S.C. § 330(a)(1)." *In re Comput. World Sols., Inc.*, 479 B.R. 483, 485 (Bankr. N.D. Ill. 2012).

5. ***Quantum Meruit* Entitlement:** On the one hand, DJC claims it seeks quantum meruit under state and federal equitable common law. On the other, DJC states that it provided valuable services "that benefited the estate." However, the fund to pay any claim of DJC derives from the gross settlement proceeds generated by undersigned's work as special counsel for the Chapter 7 Trustee of the bankruptcy estate of Andrea Williams. All of the proceeds are property of Williams' bankruptcy estate subject to administration by the Trustee under the supervision of the

bankruptcy court. "The term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of §541." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (citations and internal marks omitted). "[T]he allowance or disallowance of a claim against the bankruptcy estate, is expressly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Further, in accordance with *Stern*, 564 U.S. at 499, the court has constitutional authority to decide claim objections, as such objections may arise only in a case under the Bankruptcy Code and necessarily stem from the bankruptcy case itself." *In re Spiegel*, 657 B.R. 34, 43 (Bankr. N.D. Ill. 2024).

6.     **Need for Evidentiary Hearing:** No Court is required to hold an evidentiary hearing. "Generally, whether to **hold** an evidentiary hearing is within the trial court's discretion. *Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 359 (7th Cir. 2014). *See generally United States v. 8136 S. Dobson St.*, 125 F.3d 1076, 1086 (7th Cir. 1997). A judge may deny a hearing if the party seeking it "cannot show that an evidentiary hearing would have an articulable bearing on the material issues in dispute." *Sullivan*, 739 F.3d at 359." *Woodlawn Cmty. Dev. Corp. v. Official Comm. of Unsecured Creditors (In re Woodlawn Cmty. Dev. Corp.)*, 613 B.R. 671, 686 (N.D. Ill. 2020) (emphasis in original).

<u>**RESPONSE TO DJC'S MEMORANDUM OF LAW**</u>

**I.     INTRODUCTION and BACKGROUND**

DJC asserts that it is the firm who represented Andrea Williams and the Trustee of the Bankruptcy Estate of Andrea Williams. That is simply not the case. The Court may take judicial notice of the Bankruptcy Court's docket in Case No. 18-16866, Dkt. 59, which addresses the employment of undersigned as special counsel for the Trustee, Alex D. Moglia, attached to this

4

response as **Exhibit 2** for the Court's ease of reference. This Order makes clear that the Bankruptcy Court approved the undersigned's retention as special counsel and retained jurisdiction over matters of compensation from the bankruptcy estate of Andrea Williams. "Compensation for professionals is governed by § 330, which requires § 327 court approval. *In re Channel 2 Associates,* 88 Bankr. at 352-353." *In re Providence Television Ltd. P'ship*, 113 B.R. 446, 451 (Bankr. N.D. Ill. 1990).

As explained recently in open court, DJC initially claimed it was seeking quantum meruit from Andrea Williams, its former client. This was the basis of DJC obtaining the Trustee's consent to pursue quantum meruit in the District Court. In preparation for the settlement conference, DJC presented a demand seeking 80% of special counsel's anticipated contingency fee as its quantum meruit claim. Only after receiving this letter was undersigned alerted that DJC sought a portion of special counsel's anticipated fees. At that point, the undersigned notified the Magistrate that DJC's new position implicated the Bankruptcy Court's core jurisdiction to decide matters of professional compensation.

As soon as DJC's true position was made known, undersigned **immediately** alerted DJC, and the Magistrate Court that undersigned was unable to waive the requirements of § 330 or the Bankruptcy Court's exclusive core jurisdiction over matters of professional compensation. DJC's attempts to misrepresent its relationship with the Trustee are belied by the actual order (*Exhibit 2* hereto) demonstrating that undersigned is and has always been the Trustee's special counsel. DJC's argument on this point also reinforces why this matter should be handled by the Bankruptcy Court who entered the orders authorizing employment of special counsel and retained jurisdiction over professional compensation.

DJC also discusses the ratio of docket entries in this matter as if that has anything to do with the people who performed the work in this case, or the results achieved. According to DJC's

5

"guesstimate" of time expended, DJC contends its former employees (not named Wooten) spent approximately 20 hours on the case. DJC cannot provide competent evidence to support its guesswork. DJC's knowledge of this matter is so lacking that DJC cannot accurately relate the posture of the case at the time Wooten departed DJC or the reason for the perceived lack of merits-based docket activity between October 2024 and February 2025.

DJC also fails to discuss that its attempted money grab in this case is the proximate cause of most of the docket entries between October 29, 2024, and the date of the settlement conference in February 2025. DJC contributed nothing to the resolution of this case or to the benefit of the bankruptcy estate of Andrea Williams. DJC's involvement here is driven purely by DJC's own financial desires. DJC seeks $25,000 *per hour* for its guesstimated 20 hours of work.

DJC also provides the Court with a partial list of cases where Wooten previously achieved outstanding results for consumers in mortgage servicing litigation in the Northern District of Illinois. This includes multiple seven figure verdicts. DJC's list *does not include* multiple seven figure settlements resolving various other mortgage servicing related matters with confidentiality involving numerous other mortgage servicing defendants in the Northern District of Illinois and elsewhere. Wooten's demonstrated history of success in the Northern District of Illinois is exactly the reason the Trustee hired undersigned as special counsel. Wooten's history of excellent advocacy in this field is exactly the reason for the results achieved at this early stage of this litigation.

It is also worth noting that the undersigned initially opposed accepting the ultimate settlement offered in this case as insufficient. However, the Debtor, through Mr. Payton, made known her desire to conclude the litigation and her wish for the Trustee to accept the settlement offered. After the Debtor had communicated this position, the Trustee had no reason to refuse the settlement because it would create a surplus in favor of the Debtor.

It is not clear why DJC interjected Wooten's *base* compensation into this motion. DJC certainly profited from Wooten's employment through: the fees generated by Wooten, cases brought into DJC by Wooten's own efforts and referral network; results achieved by Wooten; Wooten introducing DJC to the practice of law in the Northern District of Illinois; Wooten opening new practice areas for DJC; Wooten utilizing his knowledge of practice in the Northern District of Illinois to open an office for DJC in Chicago; hiring the first generation of staff in DJC's Chicago office from among Wooten's own high-functioning, extremely competent colleagues who were already practicing in the Northern District of Illinois; as well as providing DJC with theories and causes of action to pursue that reaped DJC and its owner a windfall all without compensation to Wooten for his intellectual capital and work product.

In fact, Wooten and DJC are currently engaged in litigation in Travis County, Texas. DJC sued Wooten 3 days after DJC was embarrassed over its position on compensation in this matter in the April settlement conference where Wooten refused to acquiesce to DJC's demand for 80% of the anticipated fees generated by this case. DJC's dispute with Wooten is irrelevant to the present question of whether this matter should be resolved by the Bankruptcy Court or this Court. Nothing argued on this point by DJC would authorize this Court to ignore the grant of core jurisdiction over the claims process in bankruptcy and compensation of bankruptcy professionals from estate property. See *In re Yonikus* and *In re Speigel*, *supra*.

## II.     JURISDICTION

*Colorado River* has no application to this scenario. As noted earlier, it is universally understood and beyond question that:

> "The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not

> exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy courts for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

*In re Spiegel*, 657 B.R. 34, 42 (Bankr. N.D. Ill. 2024).

While it is true that a district court may withdraw the reference of some discrete portion or an entire bankruptcy case in appropriate circumstances, the process of withdrawing the reference is not happenstance, slip-shod, or willy nilly. See, *Home Ins. Co. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) ("A district judge should not hear as an original matter any part of a bankruptcy case it has referred to a bankruptcy judge without first withdrawing the reference[.]"). DJC fails to discuss how the reference is withdrawn, or the standard governing the decision to withdraw the reference. This alone should be enough to deny DJC's motion. DJC also cannot meet the standard for withdrawal of the reference.

"[A] stringent standard governs the withdrawal of matters from the bankruptcy court. First, under the relevant statute, the Court may withdraw a reference only "for cause shown." 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."). Second, while the statute does not specify what cause must be shown, the courts agree that the consideration of a number of factors is appropriate. *See, In re Sevko, Inc.*, 143 B.R. 114, 117 (N.D. Ill. 1992) (listing the factors to be considered). The most important factor, however, is whether the claim sought to be withdrawn is a core or non-core bankruptcy matter. *In re K&R Express Sys.*, 382 B.R. 443, 446-47 (N.D. Ill. 2007) ("[T]he most important factor [in the 'for cause' analysis] is whether a proceeding is core or non-core, as efficiency, uniformity and judicial economy concerns

8

are largely subsumed within it."). The party seeking the withdrawal — here, Mansker — bears the burden of convincing the Court that withdrawal is proper. *Id.*" *Mansker v. Diversified Adjustment Serv.*, 2017 U.S. Dist. LEXIS 105547, at *13-14 (N.D. Ill. July 7, 2017). Under this standard, withdrawal of the reference in this matter is not appropriate in whole or in part because the entire controversy is a core proceeding.

At base, DJC seeks professional compensation from funds held by the bankruptcy estate of Andrea Williams. This includes a claim for fees based upon a theory of quantum meruit. "[T]he allowance or disallowance of a claim against the bankruptcy estate, is expressly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Further, in accordance with *Stern*, 564 U.S. at 499, the court has constitutional authority to decide claim objections, as such objections may arise only in a case under the Bankruptcy Code and necessarily stem from the bankruptcy case itself." *In re Spiegel*, 657 B.R. 34, 43 (Bankr. N.D. Ill. 2024). "Requests for compensation under section 330 of the Bankruptcy Code arise in title 11 and are also within the court's core jurisdiction. *In re Brent*, 458 B.R. 444, 449 (Bankr. N.D. Ill. 2011) (Goldgar, J.)." *In re Gilliam*, 582 B.R. 459, 463 (Bankr. N.D. Ill. 2018). "Section 330 of the Bankruptcy Code provides the statutory authority for compensating the services and reimbursing the actual and necessary expenses of trustees, professional persons and others employed under section 327. It is "the exclusive means by which a claim for professional fees relating to a bankruptcy case is allowed." *In re Del Monico*, 2006 Bankr. LEXIS 605, 2006 WL 1027225, at *2 (Bankr. N.D. II. April 19, 2006) (citations omitted). If counsel expects to be paid from the estate, compensation must be sought and received under section 330(a). There is no alternative. *Id.*" *In re Walsh*, 538 B.R. 466, 472 (Bankr. N.D. Ill. 2015).

There appears to be one clear reason that DJC seeks to avoid having this matter determined in the bankruptcy court. DJC knows it is not employed by the bankruptcy court and is not otherwise entitled to payment from estate funds:

> A professional failing to comply with the requirements of the Code or Bankruptcy Rules may forfeit the right to compensation. . .The services . . . should be performed pursuant to appropriate authority under the Code and in accordance with an order of the court. Otherwise, the person rendering such services may be considered an officious intermeddler or a gratuitous volunteer. 3 Collier on Bankruptcy P 327.03[2][b], at 327-17 (Lawrence P. King ed., 15th ed. rev. 1999) (footnote omitted).

*In re Albrecht*, 245 B.R. 666, 671-72 (B.A.P. 10th Cir. 2000).

*Albrecht* was cited favorably by Judge Cox in denying compensation to a law firm that failed to obtain bankruptcy court approval for its work for a bankruptcy estate in the case of *In re Walsh* 538 B.R. 466, 474 (Bankr. N.D. Ill. 2015). There, Judge Cox wrote that ""[a]ny professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate." *Albrecht*, 245 B.R. at 671 (internal quotation omitted). Claims under § 503(b)(1)(A) should not be used as an end-run around § 327's retention requirements." *Id.*

DJC's brief seems to acknowledge that it has no path to compensation under the bankruptcy code. In fact, DJC's brief seems to argue that fact is a reason this Court should take up DJC's request. DJC asks this Court to bypass the requirements of the Code and exercise jurisdiction over its quantum meruit claim. This does not change the fact that DJC's only fund from which to recover under quantum meruit is the property of the bankruptcy estate of Andrea Williams. These facts militate strongly in favor of sending DJC's request to the Bankruptcy Court as a core proceeding in bankruptcy.

Quantum Meruit does not provide DJC with a license to ignore the strictures of the bankruptcy code. DJC cannot use this Court to pilfer the bankruptcy estate of Andrea Williams.

10

DJC admittedly seeks professional compensation from a fund created by special counsel's efforts, skill, and talents. DJC has stated privately it seeks 80% of the fees that it anticipates special counsel will seek from the bankruptcy court through the process set out under § 330. § 330 and Rule 2016 prevent the undisclosed and unapproved sharing of professional compensation awarded by a bankruptcy court. "Bankruptcy Rule 2016(b) also incorporates specifically the requirement that the statement filed indicate whether the attorney has shared or has agreed to share in respect of any such compensation with any other person. With limited exceptions, the sharing of compensation is expressly prohibited by section 504 of the Bankruptcy Code." 3 Collier on Bankruptcy P 329.03.

DJC's request asks the District Court to ignore the Bankruptcy Court's core jurisdiction to resolve these issues and impose an illegal fee sharing scheme on special counsel in violation of the bankruptcy code. DJC's position has no support in the law. "An application for compensation under Bankruptcy Rule 2016(a) and court approval of the application under section 330(a) of the Code are necessary only when an attorney is compensated "from the estate." Fed. R. Bankr. P. 2016(a); *see* 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1 at 294-1 to -2 (3d ed. 2000 and Supp. 2007-1)." *In re Jackson*, 401 B.R. 333, 339 n.4 (Bankr. N.D. Ill. 2009). "The Bankruptcy Code's disclosure requirements are "central to the integrity of the bankruptcy process." 3 Collier on Bankruptcy ¶ 329.01 (16th ed. 2022). And disclosure is mandatory for good reason: it protects both debtors from overreaching lawyers and creditors from losing their fair share of the estate. See *SE Prop. Holdings, LLC v. Stewart* (*In re Stewart*), 970 F.3d 1255, 1259 (10th Cir. 2020) (discussing these two justifications). Indeed, given Congress's directive, bankruptcy courts have an inescapable statutory duty to review fee arrangements. See *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1127 (7th Cir. 2003) (explaining that Section 329 "requires bankruptcy judges" to review compensation). So the bigger picture takeaway should be clear: counsel for debtors in bankruptcy

11

proceedings should recognize that failures to disclose will not be taken lightly." *Dordevic v. Layng (In re Dordevic)*, 62 F.4th 340, 342-43 (7th Cir. 2023). DJC's argument shows a complete disrespect for the rules, procedures, and controlling law governing bankruptcy professional compensation. There is no authority that would authorize this Court to withdraw the reference solely for the purpose of ignoring the rules, procedures, and controlling law governing bankruptcy professional compensation. DJC's efforts to avoid the rules, procedures, and controlling law governing bankruptcy professional compensation are all the more reason this Court should require this matter be heard in the bankruptcy court.

### III. RESPONSE TO LEGAL STANDARD FOR QUANTUM MERUIT

DJC is correct that attorneys discharged prior to resolution of a contingency matter are generally able to claim quantum meruit. In fact, the contract that undersigned executed with Andrea Williams included a "break-up" clause that allowed for the claim of attorney's fees based on the reasonable hourly rates of the attorneys who performed work on the file. See, Dkt. 73-1 at p. 5, para. 16. DJC completely ignored its own contract mandating how its compensation would be determined after DJC was fired to demand $25,000 per hour for its "guesstimated" time expended on the case.

DJC cannot claim compensation based on the undersigned's work in this matter. Undersigned is a retained bankruptcy professional hired as special counsel to prosecute a complex consumer action against a large bank defended by an AmLaw Top 50 law firm. Undersigned's compensation is based on his approved contract and remains subject to application and approval under §330 of the bankruptcy code. The debtor cannot be charged twice for special counsel's work to unjustly enrich DJC. "Duplication of services constitutes an unreasonable expenditure of time and thus is noncompensable." *In re Word of Faith Fellowship*, 1997 Bankr. LEXIS 1343, at *14

(Bankr. N.D. Ill. Aug. 26, 1997). ""Court approval under § 330(a) is what creates the liability [of the estate for compensation], not the performance of the services." *In re Jeanes*, 2004 Bankr. LEXIS 989, 2004 WL 1718093, at *2 (Bankr. N.D. Iowa June 17, 2004)." *In re Walsh*, 538 B.R. 466, 474 (Bankr. N.D. Ill. 2015).

As noted earlier, the case of *In re Enyedi* is instructive and supports sending this matter to the bankruptcy court for resolution. Like Williams' claim against Wells Fargo here, the debtor from *Enyedi* had an unscheduled claim for a personal injury that was a pre-petition asset of the bankruptcy estate. "An unscheduled asset is not abandoned by a trustee to a debtor when the case is closed." 371 B.R. 327, 333 (Bankr. N.D. Ill. 2007). "[P]re-petition property of the Debtors that was never scheduled and administered by the Trustee prior to the closing of Debtors' case, [ ] remained property of the estate and never reverted back to the Debtors. See *Parker*, 365 F.3d at 1272 ("Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate.") […] The [unscheduled asset] was never abandoned by the Trustee and remains property of the estate that is protected by the automatic stay." *Id.,* 334. The automatic stay prevents DJC from asserting an attorney's lien against the proceeds of the settlement in favor of the estate of Andrea Williams. "[A]cts taken in violation of the automatic stay imposed under section 362(a) of the Bankruptcy Code are deemed void ab initio and lack effect." *Id.* (Collecting cases). DJC's attempt to have this Court declare a right to payment from the bankruptcy estate funds in the District Court would also violate the automatic stay in the absence of this Court withdrawing the reference. This holds true as to all theories of recovery DJC might argue.

### IV.    CONCLUSION

DJC's position evinces a lack of understanding of bankruptcy law and jurisdiction. DJC would trample the obligations of the bankruptcy code in its desire for fees that it did not earn and

cannot legally recover. DJC fails to understand the automatic referral of bankruptcy matters to the bankruptcy courts of this (and every) district. DJC did not ask this Court to withdraw the reference and demonstrated no knowledge of the standard applicable to the analysis.

Because the underlying matter is a core proceeding dealing with claims against the bankruptcy estate and the compensation of bankruptcy professionals from estate funds, there is no basis to withdraw the reference. DJC has a remedy. DJC may pursue its claim in bankruptcy court. DJC may not like this option, but it is the only option that law allows. DJC asks this Court to ignore the bankruptcy court's core jurisdiction and the application of the automatic stay so that DJC may try to argue for compensation in this court. DJC's argument must fail. Core bankruptcy proceedings must be resolved in the bankruptcy court. The Trustee requests this Court order this dispute be resolved in the bankruptcy court. The bankruptcy court is the proper court to exercise jurisdiction over this dispute.

Dated: June 20, 2025

*Respectfully submitted,*

*/s/ Nick Wooten*
Nick Wooten, Esq.
Cheeley Law Group, LLC
2500 Old Milton Parkway, Suite 200
Alpharetta, Georgia 30009
770-814-7001
nick@cheeleylawgroup.com

*Special Counsel for Plaintiff Alex Moglia*

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 20, 2025, the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: <u>/s/ *Nick Wooten*</u>